UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 6:23-CR-00183** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **BRENNAN JAMES COMEAUX** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## MEMORANDUM RULING

Before the Court is a MOTION TO DISMISS INDICTMENT (the "Motion") [Doc. 25] filed by Defendant Brennan James Comeaux ("Comeaux" or "Defendant"). On August 16, 2023, a federal grand jury returned a two-count indictment charging Comeaux with possessing five firearm silencers that were neither registered to him in the National Firearms Registration and Transfer Record (Count 1), nor identified by serial numbers (Count 2) in violation of 26 U.S.C. §§ 5861(d) and (i), respectively. [Doc. 3]. Comeaux now seeks dismissal of the Indictment on grounds that the charged statutes violate the Second Amendment to the Constitution "on their face and as applied to him" under the recent Supreme Court case of *New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 597 U.S. 1, 142 S. Ct. 2111 (2022). Because silencers are "dangerous and unusual weapons" that are not protected by the Second Amendment, the Motion is DENIED.

### THE SECOND AMENDMENT

The Second Amendment to the Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. As first recognized by

the Supreme Court in 2008, the Second Amendment to the Constitution confers an individual right on Americans to lawfully possess arms. *D.C. v. Heller,* 554 U.S. 570, 128 S. Ct. 2783 (2008). But the Court made clear this right is not unlimited and does not confer a blanket "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. *Id.* at 626, 128 S. Ct. 2816. Among other restrictions, the Second Amendment does not protect those weapons "not typically possessed by law-abiding citizens for lawful purposes." *Id.* at 625, 128 S. Ct. at 2816. Since *Heller*, Courts have been asked to determine the scope of firearm restrictions that are permissible under the Second Amendment.

Most recently, in 2022, the Supreme Court decided *Bruen*, which outlines the procedure courts must use to adjudicate a Second Amendment challenge to a firearm regulation. 597 U.S. at 24, 142 S. Ct. 2129-30 (2022). Specifically, *Bruen* held that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* Thus, courts must resolve: (i) whether the text of the Second Amendment covers an individual's conduct, and, if so, (ii) whether regulation of that conduct accords with our country's "historical tradition of firearm regulation." *Id.*

## NATIONAL FIREARM ACT

The National Firearms Act ("NFA") was first enacted by Congress in 1934 as a tax provision regulating the possession and transfer of certain types of statutorily-defined "firearms." 26 U.S.C. § 5801, *et. seq.*; *Staples v. United States*, 511 U.S. 600, 114 S. Ct. 1793 (1994). Specifically, Section 5861 of the NFA makes it unlawful to possess, make, receive, or transfer a statutorily-defined "firearm" without paying the applicable tax and registering the "firearm" in the National Firearms Registration and Transfer Record ("NFRTR") maintained by the Secretary of the Treasury. 26 U.S.C. § 5801 *et seq.*; 26 U.S.C. §§ 5841; 5861(d). Importantly, the NFA defined the term "firearm" to include only specific categories of dangerous weapons, including, among other items, machineguns, short-barreled shotguns and rifles, and silencers. 26 U.S.C. § 5845(a). As its enforcement mechanism, the NFA imposes criminal penalties on those who violate the NFA's requirements, including those "who possess a firearm which is not registered to him in the NFRTR" and those who "receive or possess a firearm which is not identified by a serial number..." 26 U.S.C. §§ 5861(d) and (i). The Defendant here is charged with these two violations of the NFA – both of which carry maximum penalties of up to ten years imprisonment.

## LAW AND ANALYSIS

In his Motion, the Defendant contends that the NFA's regulation of silencers violates his rights under the Second Amendment "as that right has been interpreted by the United States Supreme Court in [*Bruen*]." [Doc. 25-1]. Specifically, the Defendant argues that the government cannot show that there was a historical

tradition of firearm registration in the United States, since "until the early 1900s, there were no requirements to register firearms with the federal or state government." [Doc. 25-1, p. 5]. And the laws that were passed then, of course, "post-date the enactment of the NFA by 120 years." *Id.* The Defendant argues similarly that serial numbers were not required or in common use when the Second Amendment was enacted, and that the first law requiring their use – albeit only for a very limited number of "firearms" – was the NFA in 1934. *Id.* at p. 8.

The government urges the Court to deny the Motion for two reasons. First, it argues that firearm silencers are not an "arms" within the meaning of the Second Amendment and therefore are not protected by it. [Doc. 27]. Second, the government argues that even if protected by the Second Amendment, the regulation of firearm silencers is "well in line with two historical traditions in this country: first, the historical tradition of regulating dangerous and unusual weapons and, second, the historical tradition of regulating commerce in firearms." *Id.* at p. 4. Determining that firearm silencers qualify as "dangerous and unusual weapons" based on their historical use and function, the Court need not address the government's other arguments.[1]

---

[1] The government cites cases from other jurisdictions in support of its argument that silencers are not "arms" protected by the Second Amendment. *See, e.g., United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018) ("because silencers are not "bearable arms," they fall outside the Second Amendment's guarantee"); *United States v. Peterson*, No. CR 22-231, 2023 WL 5383664, at *1 (E.D. La. Aug. 21, 2023) ("silencers are not arms, but rather an accessory, they are not protected by the Second Amendment"). These cases rely on the Supreme Court's definition of "bearable arms" in *Heller* 554 U.S. at 582 (2008) (defining them as "weapons of offence, or armour of defence that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another.").

The NFA was enacted 90 years ago to restrict certain weapons then being used by gangsters and bank robbers during the Prohibition Era. *Johnson v. United States*, 576 U.S. 591, 640–42, 135 S. Ct. 2551, 2582–84 (2015). "This especially restrictive regime resulted from panic over gangster-related violence and thus was instituted to regulate weapons likely to be used for criminal purposes." *Mock v. Garland*, 75 F.4th 563, 570 (5th Cir. 2023) (internal citations omitted). Although "no one was under any misconception that gangsters would obey the [registration and taxation requirements] of the NFA," the Attorney General then serving wanted "to be in a position ... to convict [them] because [they have] not complied." *Id.*

The historical record is clear that Congress passed the NFA based on its understanding that "while there is justification for permitting the citizen to keep a pistol or revolver for his own protection without any restriction, there is no reason why anyone except a law officer should have [certain types of weapons]." *Id.,* H.R.Rep. No. 1780, 73d Cong., 2d Sess., 1 (1934). As recognized in *Heller,* the Supreme Court – in discussing another statutory-defined "firearm" controlled by the

---

Although this rationale is certainly defensible, it fails to address three important facts. First, silencers have been statutorily defined as "firearms" since 1934 and for the past 90 years have been included by federal law in the exact same broad category of "weapons" as machineguns and sawed-off shotguns. *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517, 112 S. Ct. 2102 (1992) (plurality opinion). Second, once incorporated into a firearm, the firearm silencer significantly alters an important and defining characteristic of that firearm by greatly lessening the noise emitted when discharged. And third, firearm silencers have absolutely no function if not attached to the end of a firearm to reduce the noise emitted when the firearm is discharged. If the Court were to determine that firearm silencers are not "arms" and therefore not protected by the Second Amendment, its decision would essentially cabin the Second Amendment's protection to only those discrete components of firearms that are functionally necessary to expel a bullet "through the energy of an explosive." 26 U.S.C. § 5845(a). Presumably, this rationale could exclude grips, sights, stocks, and other parts of a firearm from Second Amendment protection. Here, the Court need not decide to so limit the scope of the Second Amendment's protections.

NFA – recognized that sawed-off shotguns are "not typically possessed by law-abiding citizens for lawful purposes." 554 U.S. at 625, 128 S. Ct. at 171 (2008). Instead, they "are uniquely attractive to violent criminals." *Johnson,* 576 U.S. at 640, 135 S. Ct. at 2583 (2015). They are "[m]uch easier to conceal than long-barreled shotguns used for hunting and other lawful purposes," can "be hidden under a coat, tucked into a bag, or stowed under a car seat," and can be "fired with one hand" with "more lethal effect than a pistol." *Id.*

This same rationale is easily extended to the other statutorily-defined "firearms" in the NFA. Exactly like sawed-off shotguns, the possession of machineguns, short-barreled rifles, explosive devices, and silencers – unregistered and without serial numbers – are "not typically possessed for lawful purposes," and each has the potential to substantially increase the level of violence when used in connection with criminal activity when compared to firearms typically possessed by ordinary Americans. Specific to silencers, when they are attached to a firearm, they suppress the noise normally associated with the firearm's discharge. This has the potential to allow a criminal to fire more shots without detection, avoid apprehension after shooting someone, or both. All told, like the other "firearms" controlled by the NFA, Congress has long regarded the illegal possession of a silencer as especially dangerous to public safety.

In moving to dismiss the Indictment against him, the Defendant in this case cites the requirement in *Bruen* that, "the government may not simply posit that [a firearm regulation] promotes an important interest," but must "demonstrate the

[firearm regulation] is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. 1, 17, 142 S. Ct. 2126 (2022). The Court finds that the limited and statutorily-defined list of "firearms" controlled by the NFA for the past 90 years meets that standard. *See* 26 U.S.C. § 5845(a). Indeed, as explicitly stated in *Bruen*, the Second Amendment did not confer an unfettered right for Americans "to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626, 128 S. Ct. 2783. Rather, the Court cited its decision in *U.S. v. Miller*, 307 U.S. 174, 59 S. Ct. 816, 83 L.Ed. 1206 (1939), "for the proposition that the Second Amendment right, whatever its nature, extends only to certain types of weapons." *Id.* at 623, 128 S. Ct. 2783 (citing *Miller*, 307 U.S. at 178, 59 S. Ct. 816). And the Court emphasized *Miller*'s holding that, "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns. That accords with the historical understanding of the scope of the right [protected under the Second Amendment]." *Id.* at 625, 128 S. Ct. 2783.

Silencers have been regulated by Congress for the same period of time and for the same purpose as sawed-off shotguns and machineguns. Further, as detailed in the government's Opposition and citations included therein, firearm silencers were perceived by the American public as dangerous shortly after they were patented in 1908. [Doc. 27, p. 7]. The states of Maine and New Jersey both banned their sale or possession almost immediately thereafter. And by the time the NFA was enacted, at least 15 states had imposed restrictions on their sale or possession. *Id.* The Court is

therefore without reservation in determining that – as specifically applied to silencers – the NFA's limit on the Second Amendment's protection is "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id*. at 627, 128 S. Ct. 2783.  The applicable restrictions on the possession of silencers are therefore lawful.

## CONCLUSION

Because the federal government's prohibitions against possession of firearm silencers without registering them in the NFRTR and without serial numbers do not violate the Second Amendment, the Court finds that 26 U.S.C. §§ 5861(d) and (i) are lawful both facially and as applied in this case.

Accordingly,

The Defendant's MOTION TO DISMISS INDICTMENT [Doc. 25] is DENIED.

THUS, DONE AND SIGNED in Chambers on this 10th day of January 2024.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE